IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel.<br>JAMES SWANSEY, )<br>)<br>Petitioner, )<br>v. )<br>)<br>DONALD GAETZ, Warden, )<br>Menard Correctional Center, )<br>)<br>Respondent. ) | No. 09 CV 5735<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Petitioner James Swansey has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming that the state trial court erred in denying his motion to quash his arrest and that he was denied his rights to a unanimous jury verdict and due process when only eleven of the twelve jurors signed the verdict form. For the reasons below, the petition is denied.

## BACKGROUND

Following a jury trial in the Circuit Court of Cook County, Illinois, petitioner was convicted of two counts of first degree murder and two counts of armed robbery, and was sentenced to concurrent prison terms of natural life for the murder convictions and thirty years for armed robbery.

On March 14, 1996, petitioner was indicted in the Circuit Court of Cook County. He subsequently filed a pretrial motion to quash his arrest. After a hearing, the trial court denied the motion, finding that probable cause to arrest him existed. On direct appeal, the state appellate court made the following findings, presumed correct on federal habeas review absent clear and convincing evidence to the contrary, Gonzales v. Mize, 565 F.3d 373, 384 (7th Cir. 2009), regarding the trial court's hearing on the motion to quash:

At the hearing on [petitioner's] motion to quash his arrest, the evidence
established that on September 28, 1992, the victims, Jose Torres and Javier
Guzman, were both shot in the back of the head from close range and robbed in
an alley at 1859 West Farwell in Chicago. Detective Wayne Johnson testified in
January 1993, Kenneth Kenry was being questioned as a witness in an unrelated
murder when he mentioned that Frazier Crockett, a suspect in the unrelated
murder, had been involved with [petitioner] in the unsolved murder of "two
Mexicans" in September. The officers left to verify the police reports in the
Torres/Guzman murders, and when they returned Henry gave them more details
about the murders. Henry told them that the murders occurred in an alley
between Pratt and Farwell, that the two victims had been shot in the back of their
heads while lying face down, that they had been robbed and their wallets were
found farther down the alley, and that the bullets recovered from their bodies
were .22 caliber. Henry also told officers that he knew [petitioner] and Crockett
very well because they sometimes lived with Henry, and [petitioner] and Crockett
had described the murders to him the day after they happened. Henry was
familiar with the murder weapon, a dark-colored, rusty .22 caliber revolver, with
tape on the handle, because he gave it to Crockett and defendant to sell a week
before the murders. Henry also told the police that the gun had been recovered in
an unrelated incident from another individual and subsequently gave the officers
bullets for the gun. Officer Johnson spoke to another officer and learned that the
gun had in fact been recovered in an unrelated incident. When the information
from Henry was corroborated by the police report, the officers began to look for
[petitioner] and Crockett. [Petitioner] was arrested January 24, 1993, on the street
without a warrant.

Detective Tom Blomstrand testified that he initially considered Henry a suspect in
the unrelated murder about which he was being questioned and that he told Henry
to let the officers know if he saw [petitioner] or Crockett on the street.
Blomstrand stated that Henry had initially lied about being a witness in the
unrelated murder case, but after a polygraph test Henry provided additional
information in that case. Blomstrand also testified that he relied on the
information in the police reports and also the firearms report. Blomstrand stated
that he did not seek a warrant for [petitioner's] arrest.

After his motion to quash was denied, petitioner proceeded to trial and was found guilty of two counts of first degree murder and two counts of armed robbery. Eleven of the twelve jurors signed the verdict form.

Petitioner appealed his conviction, arguing that the trial court erred in failing to grant his motion to quash arrest. The Illinois Appellate Court affirmed. People v. Swansey, No. 1-96-

2

2143 (Ill. App. Ct. May 13, 1998) (unpublished order pursuant to Illinois Supreme Court Rule 23). Petitioner filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court, which was denied. People v. Swansey, No. 85707 (Ill. Oct. 6, 1998). Petitioner did not file a petition for a writ of certiorari to the Supreme Court of the United States.

On March 30, 1998, while his direct appeal proceedings were pending, petitioner filed a pro se postconviction petition pursuant to 725 ILCS 5/122-1 et seq. in the Circuit Court of Cook County. Counsel was appointed to represent petitioner. Through counsel, petitioner filed a supplemental postconviction petition in October 2001. Petitioner argued: (1) he was denied due process when he was convicted by an eleven-person jury; (2) he received ineffective assistance of appellate counsel; and (3) under Blockburger v. United States, 284 U.S. 299 (1932), double jeopardy prevented a retrial. The court dismissed the petition. Swansey v. People, No. 85707.

In March 2006, the appellate court reversed and remanded, holding that, (1) petitioner had made a substantial showing that appellate counsel was ineffective, and (2) postconviction counsel failed to comply with Rule 651(c). People v. Swansey, No. 1-04-1941 (Ill. App Ct. March 13, 2006). On remand, the postconviction trial court denied postconviction relief, explaining that an affidavit from the twelfth juror stated that she had intended to sign the verdict form and that her failure to do so was a mere oversight.

On appeal, the Office of the State Appellate Defender filed a motion for leave to withdraw pursuant to Pennsylvania v. Finley, 481 U.S. 551 (1987), asserting that there were no issues of arguable merit for appeal. Petitioner filed a response. The Illinois Appellate Court affirmed, finding no issues of arguable merit. People v. Swansey, No. 1-07-2151 (Ill. App. Ct.

Oct. 17, 2008). Petitioner filed a PLA to the Illinois Supreme Court, which was denied. People v. Swansey, No. 107574 (Ill. Jan. 28, 2009).

On September 15, 2009, petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising two claims: (1) petitioner's motion to quash his warrantless arrest was improperly denied; and (2) petitioner was denied his rights to a unanimous jury verdict and due process when only eleven of the twelve jurors signed the verdict form.

## DISCUSSION

**I.      Legal Standards**

**28 U.S.C. § 2254(d)**

Under the Antiterrorism and Effective Death Penalty Act of 1966 ("AEDPA"), 28 U.S.C. § 2254, a petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Court. Williams v. Taylor, 526 U.S. 362, 405-06 (2000).

A federal habeas court "may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Jackson v. Frank, 348 F.3d 658, 662 (7th Cir. 2003). The court

4

can issue a writ only if it determines that the state court's application of federal law was "objectively unreasonable." Williams, 562 U.S. at 409. It is a difficult standard to meet, because unreasonable means "something lying well outside the boundaries of permissible differences of opinion." McFowler v. Jaimet, 349 F.3d 436, 447 (7th Cir. 2003).

**Procedural Default**

Further, before a state habeas petitioner pursues his claims in federal court, the AEDPA requires that he must exhaust his remedies in the state courts. 28 U.S.C. § 2254(b): Guest v. McCann, 474 F.3d 926, 929 (7th Cir. 2007). Failure to properly exhaust state remedies can occur in either of two situations: (1) when the petitioner fails to present his claim to the state court, and the state court would now bar presentation of the claim; or (2) when the state court has decided the claim on the basis of an adequate and independent state procedural ground. Conner v. McBride, 375 F.3d 643, 648 (7th Cir. 2004), citing Coleman v. Thompson, 501 U.S. 722, 729 n.1 (1991), and Ford v. Georgia, 498 U.S. 411, 423-24 (1991). If the petitioner's claims are not exhausted in state court, they are procedurally defaulted and a federal court may not consider them on the merits.

Under Illinois state law, "any claim of substantial denial of constitutional rights not raised in the original or an amended [postconviction] petition is waived" on postconviction review. 725 ILCS 5/122-3; People v. Pendleton, 861 N.E.2d 999, 1009 (Ill. 2006) (citations omitted). In addition, "any issues considered by the court on direct appeal are barred by the doctrine of res judicata, and issues which could have been raised on direct appeal [but were not] are deemed waived" on Illinois postconviction review. People v. Harris, 794 N.E.2d 181, 187 (Ill. 2002), citing People v. West, 719 N.E.2d 664, 669-70 (Ill. 1999).

5

A federal court may excuse procedural default if the petitioner demonstrates either cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). To demonstrate cause and prejudice, the petitioner must show that an "objective factor external to the defense impeded [petitioner's] counsel's efforts to comply with the State's procedural rule," such as: "(1) interference by officials that makes compliance . . . . impractical; (2) constitutionally ineffective assistance of counsel; [or] (3) a showing that the factual or legal basis for a claim was not reasonably available to counsel." Guest, 474 F.3d at 929 (internal quotations omitted). "Fundamental miscarriage of justice . . . is limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent. To show 'actual innocence,' [the petitioner must] present clear and convincing evidence that, but for the alleged error, no reasonable juror would have convicted him." Dellinger v. Bowen, 301 F.3d 758, 767 (7th Cir. 2002).

## II.     Analysis

Petitioner first argues that his Fourth Amendment rights were violated because the police lacked probable cause to arrest him and the state trial court erred in denying his motion to quash his arrest. Because petitioner raised this argument on direct appeal and the Illinois Appellate Court rejected it, it is now barred by Stone v. Powell, 428 U.S. 465. 494 (1976) (if State provides a "full and fair" opportunity to litigate a Fourth Amendment claim, it is noncognizable in federal habeas proceedings). Petitioner does not dispute that he had a full and fair opportunity to make this argument on direct appeal, nor could such an argument possibly be persuasive. The issue was briefed in the Illinois Appellate Court, which considered the merits of petitioner's argument

that the police lacked probable cause to arrest him.  Petitioner therefore certainly had a full and fair opportunity to litigate the claim.  See Watson v. Hulick, 481 F.3d 437, 541-42 (7th Cir. 2007) ("full and fair opportunity" requires only the right to present one's case).  Consequently, this court is barred from considering petitioner's Fourth Amendment claim.

Petitioner next claims that because only eleven of the twelve jurors signed his verdict form, he was denied his constitutional right to due process as well as his right to a unanimous jury verdict provided by Illinois law.  This claim is procedurally defaulted, and even if it were not, it lacks merit and at best would constitute harmless error.

This claim is procedurally defaulted because petitioner failed to raise it as a federal claim in one complete round of appellate review.  A petitioner must alert the state court to the federal nature of his claim by citing, in conjunction with the claim, the federal source of law on which he relies, a case deciding such a claim on federal grounds, or by labeling the claim "federal." Baldwin v. Reese, 541 U.S. 27, 29 (2004).  To determine whether a petitioner has fairly presented his claim before the state courts, the court looks at four factors: whether petitioner (1) relied on relevant federal cases applying constitutional analysis; (2) relied on state cases applying federal constitutional analysis to a similar factual situation; (3) asserted the claim in terms so particular as to call to mind a specific constitutional right; and (4) alleged a pattern of facts that is well within the mainstream of federal constitutional litigation.  Verdin v. O'Leary, 972 F.2d 1467, 1473-74 (7th Cir. 1992).

Petitioner has failed to meet any of these four factors, most fundamentally because the right petitioner asserts is not a cognizable federal constitutional claim.  Petitioner's PLA to the Illinois Supreme Court did make passing reference to a "due process" violation in an issue

7

heading, but the substance of his argument concerned whether Illinois statutory law and the Illinois Constitution required a unanimous twelve-person jury verdict. Petition nowhere asserted that the court had violated a parallel federal constitutional right. Nor could he have—there is no federal constitutional right to a unanimous twelve-person jury verdict in state criminal trials. Johnson v. Louisiana, 406 U.S. 356, 363 (1972) (vote of nine members of a twelve-person jury is sufficient to support a guilty verdict in a noncapital case); United States ex rel. Williams v. DeRobertis, 715 F.2d 1174, 1179 (7th Cir. 1983). Petitioner's claim is thus procedurally defaulted.

Nor has petitioner demonstrated that this procedural default should be excused by "cause for the default and actual prejudice as a result of the alleged violation of federal law," or by a "fundamental miscarriage of justice" that would result if the court declined to consider the claim. Coleman v. Thompson, 501 U.S. 722, 750 (1991). As to cause and prejudice, petitioner offers no explanation for his failure to raise a federal challenge to the jury verdict in his state court proceedings. As to "fundamental miscarriage of justice," petitioner has not met the requisite burden of demonstrating that he is actually innocent. Buie v. McAdory, 341 F.3d 623, 627 (7th Cir. 2003). Therefore, petitioner cannot excuse his procedural default.

Further, even if this claim were not procedurally defaulted, petitioner cannot show that the Illinois Appellate Court's denial of postconviction relief was contrary to, or an unreasonable application of, Supreme Court precedent. 28 U.S.C. § 2254(d)(1). The Supreme Court has clearly held that the Sixth Amendment does not require unanimity to convict in a noncapital case when the jury consists of twelve members. Johnson, 406 U.S. at 363 (1972); see also McDonald v. City of Chicago, 130 S. Ct. 3020, 3094 (2010) ("We have, moreover, resisted a

uniform approach to the Sixth Amendment's criminal jury guarantee, demanding 12-member panels and unanimous verdicts in federal trials, yet not in state trials. In recent years, the Court has repeatedly declined to grant certiorari to review that disparity.") (citations omitted); Schad v. Arizona, 501 U.S. 624, 629 (1991) (declining to decide whether the Constitution requires a unanimous jury verdict in state capital cases). Therefore, even if petitioner's theory is correct and the twelfth juror's failure to sign the verdict form was intentional, not a mere mistake, the postconviction appellate court's decision was not contrary to or an unreasonable application of Supreme Court precedent.

Moreover, even if the twelfth juror's failure to sign the verdict form violated the Constitution, any resulting error was harmless, thus precluding federal habeas relief. To determine whether a constitutional error was harmless, the court asks whether "the error had a substantial and injurious effect or influence on the verdict," resulting in actual prejudice to the defendant. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). The juror who failed to sign the verdict form signed an affidavit, presented to the Illinois Appellate Court, stating: "I intended to sign that verdict form indicating my agreement with the guilty verdict." This affidavit demonstrates that the failure to sign the verdict form was a mistake. The Illinois Appellate Court, reviewing the affidavit, agreed with this conclusion: "It's clear that she signed the other forms that she intended to sign and simply stated as she did in her affidavit that she did not sign the other form." Any error in the juror's failure to sign the verdict form was thus harmless.

## CONCLUSION

For the reasons discussed above, the petition for a writ of habeas corpus is denied.

9

**ENTER:** March 22, 2011

_____
**Robert W. Gettleman
United States District Judge**